UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KHANDAKER AHMED,

               Plaintiff,

             - against -

THE CITY UNIVERSITY OF NEW YORK;
YORK COLLEGE; and OLAJIDE OLADIPO,

               Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-7375 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

On December 29, 2015, Khandaker Ahmed commenced this action *pro se* against his former employers, the City University of New York and York College ("CUNY"), and Dr. Olajide Oladipo, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"); and Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12112–12117 ("ADA"). On July 28, 2016, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim. (Mot. Dismiss (Doc. No. 17).) For the reasons set forth herein, defendants' motion to dismiss is granted, and the case is dismissed.

## BACKGROUND

The following facts are considered true for purposes of this motion to dismiss. Ahmed is a 62-year-old Bangladeshi American who has worked as an Adjunct Assistant Professor of Economics in the CUNY system, a New York state public university, for 12 years, while also working as a full-time high school teacher. (Compl. (Doc. No. 1) at 5; Ex. A to Diamond Decl.

(Doc. No. 23-1) at 2.)[1] Ahmed has spent the last nine years of his employment with CUNY at York College. (Compl. at 5.) In the summer of 2012, Ahmed took a 2 month leave of absence due to "stress related problems." (*Id.*) Since then, Ahmed has taught introductory, 100-level Economics. (*Id.*)

On December 12, 2014, the Chair of the Business and Economics department at York College, Dr. Olajide Oladipo, emailed Ahmed to notify him that he would teach Intermediate Economics 210 in the spring. (New York State Division of Human Rights ("NYDHR") Determination and Order, Ex. B to Conroy Decl. (Doc. No. 18-2) at 3; Pl. Opp. (Doc. No. 16) at 3.)[2] On December 15, 2014, Ahmed replied to Dr. Oladipo requesting that he be allowed to teach an introductory-level course instead. (NYDHR Determination and Order at 3.) At a December 19, 2014 meeting, Dr. Oladipo informed Ahmed that the schedule had already been finalized. (*Id.*) Ahmed complained about this new assignment to his union representative on January 12, 2015, and the school's Dean on December 29, 2014. (Compl. at 3; Pl's Opp. at 2.)

On December 29, 2014, and again on January 24, 2015, Ahmed emailed Dr. Oladipo a note from his doctor stating that he "is a long term patient of diabetes which has been aggravated by his stress that links to his dual jobs (both full time and part time)." (Compl. at 7.) The note continues:

> It is medically determined that such repetition of stress related illness may be
> prevented if [Plaintiff's] job related stress does not exceed the present level. It is
> therefore recommendable as well as appreciable that he accordingly receives
> desirable accommodation at his job in this regard. To be specific, at York college
> [sic] he should be teaching the course that he has always been teaching (e.g. Econ

---

[1] For ease of reference, citations to Court documents utilize the Electronic Case Filing System ("ECF") pagination.

[2] In resolving motions to dismiss, courts may consider documents attached to, integral to, or referred to in the complaint. *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, this Court has considered the NYDHR determination. *See Macer v. Bertucci's Corp.*, No. 13-CV-2994 (JFB) (ARL), 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013) ("[I]n deciding motions to dismiss in discrimination actions, courts regularly take notice of NYDHR filings and determinations relating to a plaintiff's claims.").

102 or 103) and not any new course like Econ 210 that will require extensive
preparation, adding up his stress level.

(*Id.*) Despite being made aware of Ahmed's medical limitations, Dr. Oladipo denied his request
to teach an introductory 100-level course and instead assigned him to teach an Economics 210
course. (*Id.* at 5.) Ahmed alleges that Dr. Oladipo continued to deprive him of an appropriate
assignment for three subsequent semesters, and, in fact, Ahmed has not since taught a class at
CUNY. (*Id.*; Mot. Dismiss at 23.)

Ahmed alleges that Dr. Oladipo's decision to deny his request to teach an introductory
course was due to Dr. Oladipo's preference for faculty who "belong to his African-American
ethnicity." (*Id.* at 5.) Ahmed alleges that the number of African-American faculty members
have increased during Dr. Oladipo's tenure and "now a significant percentage [of faculty] belong
to his ethnicity." (*Id.* at 5–6.) He further alleges that Dr. Oladipo has engaged in "phasing out
people (outside his ethnic group)," which includes depriving another South Asian professor,
Sharif Choudhry, of work. (*Id.* at 6.) On that basis, Ahmed filed a complaint with the NYDHR
on February 14, 2015. (*Id.*) In a decision dated September 4, 2015, the NYDHR dismissed
Ahmed's complaint after its "investigation did not reveal sufficient evidence to establish a nexus
between [Dr. Oladipo's] decision to not offer [Ahmed] an introductory Economics course and his
age, creed, disability, race/color or national origin." (NYDHR Determination and Order at 3.)
On December 29, 2015, Ahmed commenced this action. (*See generally* Compl.)

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to
state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to withstand a
motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). The Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal* 556 U.S. at 678.

When a plaintiff proceeds *pro se*, the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris*, 572 F.3d 66 at 72 (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Notwithstanding the liberal pleading standards granted to a *pro se* plaintiff, if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted. *Twombly*, 550 U.S. at 558.

## DISCUSSION

### I.     State Sovereign Immunity under the ADA and the ADEA

Ahmed brings employment discrimination claims for monetary and injunctive relief against CUNY under both the ADA and the ADEA. (*See generally* Compl.) However, pursuant to the Eleventh Amendment of the United States Constitution, sovereign immunity deprives this Court of subject matter jurisdiction over a state and its agencies. U.S. Const. Am. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . .");

4

*see Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("'As a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'" (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ*, 466 F.3d 232, 236 (2d Cir. 2006)); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 243 (E.D.N.Y. 2015) ("This immunity extends to state agencies as well."). There can be no dispute that CUNY is a state agency. *See Clissuras v. City Univ. of New York*, 359 F.3d 79, 81–83 (2d Cir. 2004); *Soloviev*, 104 F. Supp. 3d 232, 243 ("The Second Circuit has decisively held that CUNY and its senior colleges, like [York], are 'arms of the state' which are immune from suit under the Eleventh Amendment.") (internal citations and quotation marks omitted). Thus, in order for Ahmed to subject CUNY to suit, Congress must have either enacted Title I of the ADA or ADEA pursuant to its authority under Section 5 of the Fourteenth Amendment, or CUNY must have consented to be sued. *Gollomp*, 568 F.3d 355 at 366.

Congress did not enact Title I of the ADA pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 364, 374 (2001). Nor did Congress abrogate state sovereign immunity when it enacted the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (["The] ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid."). In turn, New York has not waived its immunity or consented to be sued under either the ADA or the ADEA. *See, e.g.*, *Deadwiley v. N.Y. State Office of Children & Family Servs.*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015); *Perciballi v. New York*, No. 09-CV-6933 (WHP), 2010 U.S. Dist. LEXIS 107835, at *9–10 (S.D.N.Y. Sep. 28, 2010) ("Congress has not abrogated the states' immunity

5

under Title I or Title V of the ADA. Nor has New York waived its immunity from suits seeking either monetary or injunctive relief in federal court. Accordingly, [plaintiff's] ADA claims against [the defendant state agency] must be dismissed.") (internal citations omitted). As such, defendants' motion to dismiss Ahmed's ADA and ADEA claims against CUNY for lack of subject matter jurisdiction is granted.

## II.    Individual Liability under Title VII, ADEA, and ADA

Ahmed brings claims for the individual liability of Dr. Oladipo pursuant to Title VII, the ADEA, and the ADA. (*See generally* Compl.) However, none of those anti-discrimination statutes provides for individual liability. *See Guerra v. Jones,* 421 F. App'x 15, 17 (2d Cir. 2011) ("[D]ismissal of the Title VII and ADEA claims against the individual Defendants was appropriate as neither statute subjects individuals, even those with supervisory liability over the plaintiff, to personal liability.") (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 141 L. Ed. 2d 633 (1998)); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("[I]n the context of employment discrimination, the retaliation provision of the ADA . . . cannot provide for individual liability."). Therefore, defendants' motion to dismiss Ahmed's claims for individual liability against Dr. Oladipo is granted.

## III.   Title VII Discrimination

Ahmed alleges that CUNY discriminated against him on the basis of race, religion, and national origin in violation of Title VII. In order to prevail on a violation of Title VII, Ahmed must "establish a prima facie case of discrimination by showing that: (1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citing *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802 (1973)). However, to survive a motion to dismiss, Ahmed need only plead that "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 84–85. Here, CUNY moves to dismiss Ahmed's Title VII claim for failing to meet the first element: that CUNY discriminated against him. (*See generally* Mot. Dismiss)

In order to satisfy the first element, Ahmed must "plausibly allege" that CUNY took "an adverse employment action against him." *Vega*, 801 F.3d at 85–86. "An adverse employment action occurs when there is a 'materially adverse change' in the terms and conditions of employment." *Hrisinko v. N.Y. City Dep't of Educ.*, 369 F. App'x 232, 235 (2d Cir. 2010). For example, "materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks omitted); *see also Vega*, 801 F.3d at 85 ("An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.").

CUNY moves to dismiss Ahmed's Title VII claim on the grounds that his reassignment to teach Economics 210 did not constitute an adverse employment action. (*See generally* Mot. Dismiss.) Actions that do not change the terms and conditions of employment do not constitute a materially adverse change under Title VII. *See, e.g., Lee v. N.Y.S. Dept. of Health*, No. 98-CV-5712 (RMB) (HBP), 2001 U.S. Dist. LEXIS 11287, (S.D.N.Y. Mar. 21, 2001) ("[R]eceiving unfavorable schedules or work assignments do not rise to the level of adverse employment actions; they do not affect any ultimate employment decisions."); *Castro v. City of N.Y.*, 24 F. Supp. 3d 250, 264 (E.D.N.Y. 2014) ("{S]imply being assigned undesirable work duties . . . [is]

7

insufficient to establish adverse employment action, since [it does] not have a material impact on the terms and conditions of plaintiff's employment.") (internal quotations and citation omitted). Indeed, "[c]ertain factors, standing alone," such as an employee's dissatisfaction with assignments, "are legally insufficient" to constitute an adverse employment action. *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996) (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993).

    In this case, Ahmed, an economics professor, was assigned to teach an economics class. This does not amount to a materially adverse change in the terms and conditions of his employment. *Compare Ticali v. Roman Catholic Diocese*, 41 F. Supp. 2d 249, 264 (E.D.N.Y. 1999) (finding that a teacher's transfer from first grade to pre-kindergarten was not an adverse employment action because "[a] preference for one position over another . . . is not sufficient to show an adverse change in working conditions"), *with Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980) (finding an adverse employment action where an art teacher's responsibilities upon being transferred were "so profoundly different from those [in her previous job] as to render utterly useless her twenty years of experience . . . ." and signified both a "radical change in the nature of the work" and "severe professional . . . trauma.").

    While the "transfer of an employee to a job the employer knows or should know the employee cannot perform can constitute an adverse employment action," here Ahmed alleges nothing permitting an inference that Dr. Oladipo knew prior to his December 12, 2014 assignment that Ahmed was unable to teach Economics 210. *Karn v. Williams Advanced Materials*, No. 02-CV-0852 (JTE), 2006 U.S. Dist. LEXIS 10458, at *8 (W.D.N.Y. Feb. 14, 2006). Rather, Ahmed alleges that he did not send Dr. Oladipo a doctor's note explaining his

medical limitations until December 29, 2014 – two weeks after he was assigned to teach Economics 210. (Compl. at 7; NYDHR Determination and Order at 3.)

In addition, while "work assignments may constitute adverse employment actions if they affect . . . compensation," Ahmed does not allege that he would have been paid less for teaching Economics 210 than for an introductory course. *Rogers v. Fashion Inst. of Tech.*, No. 14-CV-6420 (AT), 2016 U.S. Dist. LEXIS 30498, at *18–20 (S.D.N.Y. Feb. 26, 2016) (internal citation omitted); *see also, e.g.*, *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (finding that an employment decision affecting compensation qualified as an adverse employment action). Thus, having failed to plead a "materially adverse change in the terms and conditions of employment," Ahmed has failed to allege an adverse employment action. *Hrisinko*, 369 F. App'x. at 235. Therefore, CUNY's motion to dismiss his employment discrimination claim under Title VII is granted.

### IV. Retaliation

Ahmed brings a claim for retaliation in response to a complaint of employment discrimination pursuant to Title VII, the ADEA, and the ADA. *See Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006)*; Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222 (2d Cir. 2001)*.* To plead a retaliation claim, Ahmed must allege: (1) that he "engaged in protected participation or opposition"; (2) "that the employer was aware of this activity"; (3) "that the employer took adverse action against the plaintiff"; and (4) "that a causal connection exists between the protected activity and the adverse action." *Kessler*, 461 F.3d at 205–06; *accord Lovejoy-Wilson*, 263 F.3d at 223. The definition of adverse employment action is broader in the retaliation context than in the discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination.");

*accord Chung v. City Univ. of N.Y.*, 605 Fed. Appx. 20, 24 n.1 (2d Cir. N.Y. 2015) ("Though the phraseology is the same, the concept of an 'adverse employment action' is broader in the retaliation context than in the discrimination context.") As to causation, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d 72, 90; *accord Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2527 (2013).

Here, Ahmed alleges he was terminated in January 2015 in retaliation for the complaints he made to his union representative on January 12, 2015, the school's Dean on December 29, 2014, and Dr. Oladipo on December 29, 2014, and January 24, 2015. (Pl's Opp. at 2; Compl. at 3.) Ahmed further alleges that this retaliation "continued with full force" after his complaint to the NYDHR on February 14, 2015. (Pl's Opp. at 2; Compl. at 5.) However, Ahmed has not pled facts that establish the alleged retaliation as a but-for cause of his termination. First, Ahmed's internal complaints to the union, Dean, and Dr. Oladipo all took place subsequent to the alleged retaliatory action of Dr. Oladipo informing Ahmed on December 12, 2014 that he would be teaching Economics 210 in the spring. (NYDHR Determination and Order at 3; Pl. Opp. at 3.) *See Littlejohn v. City of New York*, 795 F.3d 297, 316 n.15 (2d Cir. 2015) (holding that where plaintiff was "excluded from meetings before she began complaining about discrimination . . . that exclusion could not have been in retaliation for her complaints.").

Likewise, to the extent that Ahmed alleges that the retaliatory act did not occur until January 2015, this claim also fails the but-for causation test. Whether the locus of the alleged retaliatory action is characterized as reassignment, or refusal to accede to Ahmed's requested accommodation, the decision to change Ahmed's coursework was made in December 2014 – before Ahmed complained either to his employer, or the NYDHR. *See Slattery v. Swiss*

*Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (holding that an "inference of retaliation does not arise" where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity"); *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 63 (2d Cir. 2016) (finding that an inference of retaliation does not arise where the alleged retaliatory action of reassignment had been contemplated prior to the plaintiff's initial internal complaints); *Báez v. New York*, 629 F. App'x 116, 119 (2d Cir. 2015) ("[T]he fact that the alleged retaliatory course of conduct began long before [plaintiff's alleged protected activity] undercuts any inference of a causal connection between the two."). Accordingly, defendants' motion to dismiss Ahmed's retaliation claim is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Doc. No. 17) is granted. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

Although Ahmed paid the filing fee to initiate the action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to plaintiff Khandaker Ahmed, *pro se*, at the address listed for Ahmed, and note the mailing on the docket.

SO ORDERED.

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge

Dated: Brooklyn, New York
      March 27, 2017